UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIANO MORALES, | ) |
| Petitioner, | ) |
| | ) No. 12 C 9144 |
| v. | ) |
| | ) Chief Judge Rubén Castillo |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Petitioner Mariano Morales's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Petitioner's motion is denied, and this case is dismissed with prejudice.

## RELEVANT FACTS

The relevant facts relating to Petitioner's criminal conviction are set forth in a published opinion by the Seventh Circuit Court of Appeals, *see United States v. Morales* (*Morales II*), 655 F.3d 608 (7th Cir. 2011), and are repeated here only as they pertain to Petitioner's current § 2255 petition.

Petitioner was one of sixteen individuals indicted by a federal grand jury on various racketeering-related charges in 2006. Petitioner and his codefendants were members of the Aurora Deuces, the Aurora, Illinois chapter of the Insane Deuce Nation street gang. Petitioner had a leadership position within the gang—he held the third highest rank—and helped craft the gang's laws, including the standing order to kill members of a rival gang on sight. Petitioner was indicted on charges of racketeering conspiracy, conspiracy to commit murder, and conspiracy to distribute narcotics, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18

U.S.C. § 1961 *et seq.* ("RICO"). In an effort not to overwhelm the jury, and due to the logistical challenge of trying so many defendants in a single courtroom, this Court severed the case into two trials. Petitioner was grouped with the "less major players" and tried before Judge Leinenweber. On December 10, 2008, after a three-month trial, a jury acquitted Petitioner of conspiracy to commit murder and found him guilty of racketeering conspiracy and narcotics conspiracy. Petitioner received two concurrent sentences of life imprisonment on July 7, 2009. On that same day, he filed his notice of appeal, challenging both his conviction and his sentence. The Seventh Circuit affirmed both. *Morales II*, 655 F.3d at 647. The Seventh Circuit held, as relevant to Petitioner, that (1) the district court's failure to state its reasons on the record for granting the government's motion for an anonymous jury empanelment was harmless error; (2) the district court did not abuse its discretion in declining to further sever the proceedings; (3) the district court did not abuse its discretion when it denied the defendants' motion for a hearing based on alleged juror misconduct; and (4) the admission of a statement about Petitioner's criminal history was not prejudicial.[1] Petitioner now raises this timely collateral attack to his sentence.[2]

## LEGAL STANDARDS

Section 2255 allows an incarcerated prisoner to request his sentence be vacated on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

---

[1] The Seventh Circuit also affirmed the convictions and sentences of Petitioner's codefendants.

[2] The Seventh Circuit affirmed Petitioner's conviction on August 18, 2011, and his § 2255 motion was postmarked November 6, 2012. Petitioner's petition is therefore timely because it was postmarked within one year of the expiration of the 90-day time period to file a petition for certiorari following his appeal. *See Clay v. United States*, 537 U.S. 522, 532 (2003).

2

28 U.S.C. § 2255. "[R]elief under 28 U.S.C. § 2255 is limited to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal quotation marks omitted)).

A section 2255 proceeding is not a substitute for direct appeal. *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989). "[A] failure to raise constitutional challenges to a conviction on direct appeal bars a petitioner from raising the same issue in a section 2255 proceeding–absent a showing of good cause for and prejudice from the failure to appeal." *Id.* To show good cause for a failure to raise an issue on appeal, the petitioner must demonstrate that an external objective factor impeded his ability to appeal. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel may constitute good cause if counsel's incompetence rises to the level of constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668, 690 (1984). *See id.* at 488-92.

## ANALYSIS

Petitioner suggests four grounds on which this Court should vacate his sentence. He contends that (1) he received ineffective assistance of trial counsel at all stages of the proceeding; (2) he received ineffective assistance of appellate counsel on his direct appeal; (3) he was deprived of a fair trial because the prosecutors engaged in professional misconduct by defrauding the jury; and (4) he was deprived of a fair trial because the trial court did not issue written rulings on some of his motions. After a careful analysis of the relevant pleadings and record in this case, this Court concludes that none of Petitioner's claims merits relief under the applicable standards.

3

Additionally, although Petitioner insists that an evidentiary hearing is required, the Court has the "discretion to determine whether a habeas corpus petitioner is entitled to an evidentiary hearing." *Prewitt v. United States*, 83 F.3d 812, 820 (7th Cir. 1996). If the Court determines as a matter of law that the petitioner has no grounds for relief, the Court may bypass an evidentiary hearing. *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991). "Mere unsupported allegations cannot sustain a petitioner's request for a hearing." *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989). Here, the Court finds that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b). Accordingly, the Court denies Petitioner's request for a hearing.

## I. Petitioner Received Effective Representation by His Trial Counsel

Petitioner first argues that he received ineffective assistance of trial counsel because his attorney, Paul Camarena, failed to: (1) conduct adequate investigation into the law of the Tenth Amendment of the Constitution; (2) investigate and apply Article 1, section 1 of the United States Constitution as it pertains to 18 U.S.C. § 201(c); (3) move to suppress witness testimony because the witnesses received unlawful inducements; (4) move to suppress witness testimony because the witnesses committed crimes while they were working as informants and received immunity for violent crimes; (5) adequately argue for a speedy trial; (6) seek a bond hearing; (7) move for acquittal pursuant to Federal Rule of Criminal Procedure 29; and (8) make arguments about liability under the doctrine of *Pinkerton v. United States*, 328 U.S. 640 (1946), at sentencing. (R. 3, Pet'r's Mem. at 5-23.) Because Petitioner had the same attorney at trial and on appeal, he is not subject to procedural default for failing to raise his ineffective assistance claim on direct appeal. *See Prewitt*, 83 F.3d at 816 (citing *United States v. Hall*, 35 F.3d 310, 316 (7th Cir. 1994)). To establish ineffective assistance of counsel, however, Petitioner must

4

show that his counsel was deficient and that this deficiency prejudiced him. *Strickland*, 466 U.S. at 687. A failure to establish either element dooms Petitioner's claim. *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010) (citing *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)). Petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and the Court must resist any temptation to "take up the role of the 'Monday morning quarterback,'" *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

Unfortunately for Petitioner, all of his assertions of ineffectiveness represent the classic type of "Monday Morning quarterbacking" the Court eschews and are based on pure speculation and conjecture; none of his claims are adequately supported by facts. This Court has consistently rejected similarly unsupported assertions of constitutional violations. *See, e.g., United States ex rel. Holland v. Rednour*, 761 F. Supp. 2d 776, 785 (N.D. Ill. 2010); *United States ex rel. DeCreti v. Wilson*, 967 F. Supp. 303, 308 (N.D. Ill. 1997). The Court will not "question the objectively reasonable strategic decisions of counsel," *see Harris*, 894 F.2d at 877 (citing *Strickland*, 466 U.S. at 690), nor will it require an attorney to assert meritless claims, *see Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013).

### A. The indictment did not violate the Tenth Amendment

Petitioner's first argument is that he was denied effective assistance of counsel in that the indictment violated the Tenth Amendment. (Pet'r's Mem. at 7-10.) Petitioner argues that the indictment charged state crimes that, with the exception of the drug offenses, did not involve interstate commerce and thus could not constitute the basis of a RICO charge. (*Id.* at 9.) Consequently, he contends that his attorney should have moved, as allowed by Federal Rule

5

12(b)(3) of Criminal Procedure, to dismiss the indictment as invalid under the Tenth Amendment. (*Id.* at 8.)

An indictment charging RICO offenses "need only charge—after identifying a proper enterprise and the defendant's association with that enterprise—that the defendant knowingly joined a conspiracy, the objective of which was to operate that enterprise through a pattern of racketeering activity." *United States v. Tello*, 687 F.3d 785, 794 (7th Cir. 2012) (citing *United States v. Glecier*, 923 F.2d 496, 500 (7th Cir. 1991)). The indictment at issue here included facts about the Aurora Deuces, the type of street gang that has consistently been held to constitute a RICO enterprise. *United States v. Morales* (*Morales I*), No. 03 CR 90, 2009 WL 1456567, at *4 (N.D. Ill. May 22, 2009) (citing *United States v. Olson*, 450 F.3d 655, 666-68 (7th Cir. 2006); *United States v. Phillips*, 239 F.3d 829, 844 (7th Cir. 2001)). The indictment also included allegations as to Petitioner's knowing involvement in the enterprise. *Id.* Additionally, Petitioner concedes that an element of interstate commerce was present in the drug offenses. (Pet'r's Mem. at 9.) Thus, the indictment properly charged Petitioner with offenses under RICO, and even if the indictment was improper, counsel had reason to believe that the government would have been able to re-indict Petitioner if the Court had dismissed the indictment.

Alternatively, Petitioner argues that a RICO indictment was inappropriate because the federal prosecution was a sham; he contends that federal authorities did not conduct the investigation and only entered the case upon Petitioner's arrest. (*Id.* at 10.) Regardless of the merits of the legal claim, the factual allegation is false. The federal authorities began the investigation into the Aurora Deuces in 2002; the indictment was filed in 2006. *Morales II*, 655 F.3d at 615. Attorneys are not required to put forth meritless arguments, *Warren*, 712 F.3d at

1104, and the Court finds that Mr. Camarena's failure to move to dismiss the indictment did not render his assistance ineffective.

### B. The use of immunized witnesses was not unconstitutional

Three of Petitioner's arguments overlap, and the Court addresses them as one. Petitioner argues that counsel failed to "investigate and apply the constitutional provision of" Article 1, section 1 of the Constitution as it pertains to 18 U.S.C. § 201(c), and that counsel failed to move to suppress testimony that was provided in violation of 18 U.S.C. § 201(c). (Pet'r's Mem. at 8-13.) Petitioner asserts that 18 U.S.C. § 201 prohibits the government from granting immunity or monetary inducements to informants. (*Id.* at 10-11.) When the government uses such inducements to secure witnesses for a trial, Petitioner contends that Article I, section I of the Constitution prohibits the Court from "plac[ing] common-law over statutory law" and thus requires the Court to set aside the jury's verdict unless the jury is properly informed about the "paid for snitch testimony." (*Id.* at 12.) Based on this premise, he argues that his counsel should have moved to suppress the testimony of the prosecution's star witness, Orlando Rivera, to whom the government offered immunity. (*Id.* at 13.) In addition, Petitioner argues that the witnesses' grants of immunity should not cover violent crimes and crimes they committed while working undercover as an informant. (*Id.* at 17-18.) Consequently, he contends that counsel's failure to move to suppress the immunized testimony of Akeem Horton, Lorenzo Becerra, and Juan Osorio constituted ineffective assistance of counsel.

As Petitioner states in his memorandum, the government's grant of immunity or offer of monetary inducements to informants is permissible as long as the inducements are disclosed to the jury and are not contingent upon subsequent indictments or convictions. *United States v. Hendrix*, 482 F.3d 962, 969 (7th Cir. 2007); *United States v. Dawson*, 425 F.3d 389, 395, 398

(7th Cir. 2005), *on reh'g in unrelated part*, 434 F.3d 956 (7th Cir. 2006); *see also Mankarious v. United States*, 282 F.3d 940, 945 (7th Cir. 2002) (holding that habeas petitioners were not entitled to an evidentiary hearing to explore whether government witnesses had received improper inducements where counsel had ample opportunity to cross-examine the witnesses on what sort of inducements they may have received). Petitioner's assertion that "[t]he trial record does not show a grant of immunity," (Pet'r's Mem. at 10), is baseless. The inducements and the immunity Rivera received were made clear to the jury at trial; in fact, as Petitioner points out, his own counsel spent the majority of his opening argument discussing these issues. (Tr. Transcript Vol. 1 at 59:4-60:13.) Then, at the beginning of his direct examination, Rivera testified as to the immunity he was offered and stated his understanding that the immunity was not contingent on a specific outcome of the trial. (Tr. Transcript Vol. 3-A at 393:21-394:12.)

Throughout his cross-examination of Rivera, Petitioner's counsel extracted testimony relating both to the offer of immunity and to the monetary inducement Rivera received. (*See* Tr. Transcript Vol. 6-B at 1015:2-7, 1026:21-1027:24, 1028:16-1029:2.) Rivera admitted in cross-examination that he has attempted murder 47 times, (*id.* at 1036:19-21), which demonstrates the lack of merit in Petitioner's argument that fraud on the jury was committed because the jury did not realize how violent the immunized witnesses for the prosecution were, (*see* Pet'r's Mem. at 17-18). Finally, in the prosecution's re-direct examination, Rivera testified even more extensively as to the monetary compensation he received from the government for his time as an informant and as to his understanding of his immunity—notably, that he was not protected from the prosecution of various crimes he committed while working as an informant. (Tr. Transcript Vol. 9-A at 1637:10-1642:13.) Similar testimony about grants of immunity and prior offenses was elicited from Horton, Becerra, and Osorio at the beginning of each direct examination, and

the terms of each witness's cooperation were explored during their cross-examinations. (Tr. Transcript Vol. 10-B at 1944:1-1945:25, 2027:14-2028:3; Tr. Transcript Vol. 12-A at 2326:7-2327:5, 2397:22-2398:12; Tr. Transcript Vol. 14-B at 2982:5-9, 3082:11-3084:6.)

As Petitioner states in his memorandum, "the credibility of witnesses is to be determined by the jury." (Pet'r's Mem. at 12) (quoting *United States v. Cervantes-Pacheco*, 826 F.2d 310 (5th Cir. 1987)). The Court finds that Petitioner's counsel adequately advocated on Petitioner's behalf regarding the testimony of Rivera, Horton, Becerra, and Osorio and ensured that the jury had the information it needed to assess the witnesses' credibility. Contrary to Petitioner's insistence, the use of informants as witnesses did not violate the Constitution or constitute fraud on the jury under the standard set forth in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244-50 (1944).[3] Petitioner's contention that the testimony of these witnesses was unconstitutional and that moving to suppress their testimony "was mandatory for a valid defense," (*see* Pet'r's Mem. at 19-20), is unfounded. Counsel is not required to raise arguments that are likely to fail. *Rodriguez v. United States*, 286 F.3d 972, 985 (7th Cir. 2002). The Court concludes that counsel's failure to move to suppress the testimony of these witnesses did not constitute fraud on the jury or ineffective representation.

---

[3] Petitioner relies heavily on *Hazel-Atlas Glass* throughout his memorandum to support his argument that the prosecution committed fraud on the jury and defense counsel aided such fraud, and that consequently the jury verdict should be set aside. (*See, e.g.*, Pet'r's Mem. at 13, 18.) *Hazel-Atlas Glass* involved "a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals." 322 U.S. at 245. Overturning the judgment was appropriate because the Supreme Court was presented with conclusive "[p]roof of the scheme, and of its complete success up to date." *Id.* at 246. The Court specifically distinguished the issue before it from the simple case of a witness who possibly committed perjury. *Id.* at 245. Here, Petitioner fails to allege any facts that might support the existence of "a deliberately planned and carefully executed scheme." The Court finds no parallels between *Hazel-Atlas Glass* and the case at bar, and the Court does not find any evidence that fraud on the jury was committed in Petitioner's trial.

### C. Counsel did not fail to move for a speedy trial

Petitioner next contends that his counsel was ineffective because he "failed to adequately argue for a fast and speedy trial." (Pet'r's Mem. at 6.) This argument is meritless because Petitioner's counsel *did* move to dismiss the indictment for deprivation of a speedy trial. (Tr. R. 1053, Morales's Mot. Dismiss.)

### D. Counsel's failure to move for a bond was not unreasonable or prejudicial

Petitioner's argument that counsel rendered ineffective assistance because he failed to move for a bond due to the delay of the trial, (Pet'r's Mem. at 15), clearly fails to meet the prejudice prong of the *Strickland* standard. Although Petitioner contends that "a motion for a bond would have been reasonable and could have been granted," (*id.*), it is highly unlikely that such a motion would have been granted. Petitioner was charged with highly dangerous offenses, including conspiracy to commit murder. Consequently, the motion one of his codefendants filed for a temporary bond to attend his wife's funeral was denied. Therefore, Petitioner's counsel had a reasonable basis to believe that a motion for bond for Petitioner would be denied. Additionally, whether Petitioner was incarcerated or free on bond prior to his trial was not prejudicial. The Court finds that Petitioner's representation was not rendered constitutionally ineffective when his counsel failed to move for a bond.

### E. Counsel's failure to move for acquittal was not prejudicial

Petitioner next argues that his counsel was deficient because he failed to file a Rule 29 motion for acquittal. (*Id.* at 20.) The Court cannot find counsel's failure prejudicial because five of Petitioner's codefendants moved for acquittal pursuant to Rule 29(c) and each of their motions were denied. See *Morales I*, 2009 WL 1456567, at *9. Seeking to avoid this result, Petitioner contends that his codefendants' Rule 29 motions were denied because their counsel failed to

10

argue that witness testimony should have been excluded as a matter of law due to the government's failure to provide a *Santiago* proffer. (Pet'r's Mem. at 21.) If counsel had made this argument in a Rule 29 motion, Petitioner contends, the Court would have granted the motion for acquittal and dismissed the indictment as a matter of law. (*Id.* at 22.) This argument fails because the government provided a *Santiago* proffer on November 9, 2007. Thus, even assuming *arguendo* that Petitioner's counsel acted unreasonably in failing to move for acquittal pursuant to Rule 29, such failure was not prejudicial because his motion would have been denied as baseless, as his codefendants' were.

### F. Counsel's representation of Petitioner at sentencing was not ineffective

Finally, Petitioner argues that his counsel failed to argue that the sentencing enhancement the trial judge applied pursuant to *Pinkerton*, which caused him to be sentenced at offense level 43 rather than offense level 38, was incorrect as a matter of law. (Pet'r's Mem. at 22.) Petitioner contends that the jury found him not guilty of first degree murder, only of second degree murder. This assertion is incorrect; the special verdict form indicates that the jury found Petitioner responsible for first degree murder as part of a pattern of racketeering activities. To the extent that the special verdict form indicates a finding that the murders Petitioner was responsible for were not premeditated, Petitioner's counsel argued for a downward departure at the sentencing proceedings. (Morales Sentencing Tr. at 33:2-12.) Thus, counsel was not ineffective for failing to argue that the jury did not find Petitioner guilty of first degree murder.

Viewing the trial record as a whole, the Court concludes that Mr. Camarena provided reasonably effective assistance. *See Strickland*, 466 U.S. at 690. The Court thus declines to vacate Petitioner's sentence on the ground that he was deprived of effective assistance of counsel at trial.

## II. Petitioner Received Effective Representation by His Appellate Counsel

Petitioner next argues that he was denied effective assistance of appellate counsel, a role which was also performed by Mr. Camarena. (Pet'r's Mem. at 24-25.) An appellate counsel's performance is deficient if he fails to argue an issue that is "both obvious and clearly stronger" than the issues he did raise. *Lee v. Davis*, 328 F.3d 896, 900-01 (7th Cir. 2003). "However, counsel is not required to raise every non-frivolous issue on appeal." *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004) (citing *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996)). "There is a strong presumption that counsel's performance is reasonable." *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1 (2003)).

On appeal, Petitioner's counsel presented the following issues collectively with the other defendants: (1) that the anonymous jury empanelment undermined the effectiveness of voir dire and caused the jury to be prejudiced against the defendants; (2) that the denial of the defendants' motions for severance was inherently prejudicial; and (3) that the district court should have ordered a new trial based on allegations of juror misconduct. *Morales II*, 655 F.3d at 629. Individually, Petitioner's counsel also challenged the admission of evidence about Petitioner's criminal history. *Id.* at 633. Petitioner argues that his counsel should have presented the following issues on appeal: (1) that Petitioner was denied a fair trial by the violation of 18 U.S.C. §§ 201(c)(2) and (3); and (2) that Petitioner was denied a fair trial by the fraud on the jury under the standard set forth in *Hazel-Atlas Glass*, 322 U.S. at 244. (Pet'r's Mem. at 24.) Petitioner asserts in a conclusory fashion that his proposed claims are "much stronger" than the "half-baked claim presented by appellate counsel," and that "had a real appellate counsel appealed the claim . . . [Petitioner] would have received relief on direct appeal in the form of reversals of his two convictions." (*Id.* at 25.) Petitioner provides no evidence or case law that supports his

12

assertions, however, and his conclusory speculations are not enough to justify the evidentiary hearing on this ground that he requests. Petitioner asserted these same claims in the context of counsel's alleged failings at trial, and the Court found them meritless. Specifically, the Court found that the grants of immunity to the prosecution's witnesses were properly disclosed to the jury and that the jury was sufficiently informed about the witnesses to make credibility determinations. Petitioner argues that it is "highly likely" that another attorney would have appealed the 18 U.S.C. § 201(c) issue. (*Id.* at 28.) Even if this speculation is true, Petitioner's appellate counsel was allowed to make strategic decisions that other attorneys would not have made, as long as his tactics "fell within the wide range of reasonable professional assistance." *Smith v. Gaetz*, 565 F.3d 346, 354 (7th Cir. 2009). The Court finds that neither of Petitioner's proposed arguments are "both obvious and clearly stronger" than the issues his counsel raised on appeal. *See id.*; *Lee*, 328 F.3d at 900-01. Accordingly, the Court concludes that counsel's strategy on appeal was reasonable and was not constitutionally ineffective.

### III. Petitioner Was Not Deprived of a Fair Trial Due to Prosecutorial Misconduct

Petitioner next argues that the government committed fraud on the jury by allowing Rivera to commit serious crimes while working as an agent for the government and by allowing paid witnesses to testify without revealing the fact that they were paid. (Pet'r's Mem. at 26.) Because Petitioner has failed to establish that his appellate counsel was ineffective, no good cause exists for his failure to raise this issue on direct appeal. *Theodorou*, 887 F.2d at 1339; *see Murray*, 477 U.S. at 488. For the sake of completeness, the Court is inclined to inquire into the issue of prejudice, despite the procedural default of this claim. Petitioner raises no new arguments, however, and supports his claim of prosecutorial misconduct by repeating the same conclusory statements the Court has already determined are unfounded. Accordingly, the Court

has no grounds on which to base a finding that Petitioner was denied a fair trial due to prosecutorial misconduct.

### IV. Petitioner Was Not Deprived of a Fair Trial Due to a Lack of Oral or Written Rulings

Petitioner's final ground for a vacation of his sentence is that the trial judge did not issue written opinions on "dozens of motions for a fast and speedy trial," the sentencing enhancement, and the denial of his motions for appointment of another attorney at sentencing and upon appeal. (Pet'r's Mem. at 27-28.) This argument is procedurally defaulted because Petitioner failed to raise it on direct appeal. *Theodorou*, 887 F.2d at 1339. Petitioner has not provided good cause for the default, nor has he shown that he was prejudiced by the lack of written rulings. Petitioner has not alleged, and the Court does not believe, that the lack of written rulings is indicative of a lack of consideration. Because the Court has already concluded that the sentencing enhancement, the denial of Petitioner's motion for bond, and the representation he received were not grounds for relief, the Court cannot conceive of a way in which the lack of written rulings might have prejudiced Petitioner. The Court thus declines to vacate Petitioner's sentence on the ground that the lack of written rulings on a few of the enormous number of motions in this proceeding deprived him of a fair trial.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED. The Clerk of the Court is directed to enter judgment against Petitioner and in favor of the respondent United States of America.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

Dated: November 27, 2013